## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

GEOFFREY McISAAC,          )
                                 )
       Plaintiff,          )
v.                           )
                                 )
CITY OF SAVANNAH, SAVANNAH    )
AIRPORT COMMISSION, GREGORY   )
KELLY, and FRED McCOSBY in      )
their individual and official         )
capacities,                 )
                                 )
       Defendants.     )

**CIVIL ACTION**    4:19CV-21
**File No. _____**

**JURY TRIAL REQUESTED**

## COMPLAINT

COMES NOW Plaintiff, Geoffrey McIsaac ("Mr. McIsaac" or "Plaintiff"), and files this Complaint for Damages and Equitable Relief against Defendants City of Savannah, Georgia, the Savannah Airport Commission, Gregory Kelly, and Fred McCosby, showing the Court as follows:

## INTRODUCTION

1.

This is a whistleblower and retaliation case brought under the First Amendment to the United States Constitution, the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA"), the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311 et seq. ("USERRA"), and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq.* ("ADAAA"). Mr. McIsaac is a former Airport Security Manager employed by Defendants. He is also a veteran of the U.S. Armed Forces and suffers from Post-Traumatic Stress Disorder ("PTSD"). Mr. McIsaac suffered relentless discrimination and harassment on account of his

PTSD, with which he was diagnosed as a result of his service in the armed forces, by his supervisor, Defendant Fred McCosby. Indeed, numerous individuals in the security department concurred during an internal investigation, that Defendant McCosby targeted Mr. McIsaac for abusive treatment more severely than any other individual who reported to him.  Mr. McCosby constantly belittled Mr. McIsaac, called him "mental," "crazy, crazy, crazy", and other derogatory names related to his disability, and forbid him from reporting any violations of law involving Airport Security to regulatory authorities.  Fed up with the constant abuse, Mr. McIsaac reported Mr. McCosby multiple times to Defendants' Head of Human Resources, John Rauback.  Mr. Rauback was Mr. McIsaac's only advocate and engaged in protected activity on his behalf, but was fired as a result.  When Mr. McIsaac began advocating for himself with Defendant Human Resources, Defendant McCosby reprimanded him, warned him that he would end up like Mr. Rauback if he kept complaining about him, and eventually fired him for complaining about the discrimination and harassment. Plaintiff seeks all available legal and equitable relief in this lawsuit.

## **PARTIES**

2.

Plaintiff, Mr. Geoffrey McIsaac is a resident of Bluffton, South Carolina.  He subjects himself to the jurisdiction of this Court.

3.

Defendant City of Savannah, Georgia, hereinafter referred to as the "City of Savannah," is a municipal corporation organized under the laws of the State of Georgia and subject to the

jurisdiction of this Court. It is governed by a mayor and city council. The City of Savannah may be served with process by personal service upon Mayor Eddie DeLoach at 2 East Bay Street in Savannah, Georgia 31401.

4.

Defendant SAC is a public corporation created by an act of the Georgia General Assembly, and maintained as an agency of the Defendant City of Savannah. It is governed by a five-member Board of Commissioners appointed by the Mayor of the City of Savannah and is subject to the jurisdiction of this Court. The SAC may be served with process by personal service upon Chairman Stephen S. Green, at 400 Airways Avenue in Savannah, Georgia 31408.

5.

Defendant Gregory Kelly was, at all relevant times, the Executive Director of the SAC. He is sued in his individual and official capacity and may be served with process by personal service at his residence or by other means authorized by the Georgia Civil Practice Act.

6.

Defendant Fred McCosby is the Director of Operations at the SAC. He is sued in his individual and official capacity and may be served with process by personal service at his residence or by other means authorized by the Georgia Civil Practice Act.

7.

At all relevant times, Plaintiff met the definition of a "public employee" within the meaning of O.C.G.A. § 45-1-4(a)(3).

3

8.

At all relevant times, Defendant City of Savannah was a "public employer" within the meaning of O.C.G.A. § 45-1-4(a)(4).

9.

At all relevant times, Defendant SAC was a "public employer" within the meaning of O.C.G.A. § 45-1-4(a)(4).

10.

Plaintiff is a "qualified individual with a disability" as that term is used and defined by the ADAAA, 42 U.S.C. § 12102(1) and § 12111(8).

11.

Plaintiff is a person with a disability because he has an actual physical impairment causing substantial limitation in one or more major life activities, has a record of impairment, and because he was regarded as having an impairment.

12.

At all relevant times, Defendant City of Savannah was an "employer" within the meaning of USERRA, 38 U.S.C. § 4303(4)(A) and the ADAAA, 42 U.S.C. § 12111(5).

13.

At all relevant times, Defendant SAC was an "employer" within the meaning of USERRA, 38 U.S.C. § 4303(4)(A) and the ADAAA, 42 U.S.C. § 12111(5).

14.

At all relevant times, Defendant Kelly was an "employer" within the meaning of USERRA, 38 U.S.C. § 4303(4)(A).

15.

At all relevant times, Defendant McCosby was an "employer" within the meaning of USERRA, 38 U.S.C. § 4303(4)(A).

16.

Because of the Defendant City of Savannah's control and authority over Defendant SAC and the benefits of employees of Defendant SAC, complete relief cannot be afforded to Plaintiffs in the absence of Defendant City of Savannah from this action.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

17.

Mr. McIsaac has satisfied all administrative prerequisites to perfect his claims of discrimination and retaliation under the ADA.  Specifically, he timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 11, 2018.  On January 9, 2019, he timely requested his notice of right to sue from the EEOC, but due to the federal government shutdown, has not received a response thereto.  As a result, Mr. McIsaac will supplement his pleading with proof of his Notice of Right to Sue when the government reopens, the timing of which is presently uncertain.

## JURISDICTION AND VENUE

### 18.

Plaintiffs' claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331, § 1343(a), 29 U.S.C. § 2617(a)(2), and 42 U.S.C. § 2000e-5(f)(3). This Court also has supplemental jurisdiction over Plaintiffs' state law Georgia Whistleblower Act claims under 28 U.S.C. § 1367.

### 19.

The violations of Plaintiffs' rights occurred in the Southern District of Georgia. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (d), as the acts of which Plaintiff complains occurred in the Savannah Division of the United States District Court for the Southern District of Georgia, and all Defendants have significant contacts with this venue by way of their operation and management and physical location in Savannah, Georgia.

## FACTS

### 20.

Plaintiff Geoffrey McIsaac is a veteran of the U.S. Armed Forces and suffers from PTSD as a result of specific trauma experienced during his military service.

### 21.

Plaintiff McIsaac began employment with Defendant SAC on October 26, 2015.

22.

As early as November 11, 2015, Defendant McCosby began having angry outbursts and berating Plaintiff McIsaac, calling him a disgrace to the program, and forbidding him from sending emails without permission.

23.

Throughout Plaintiff McIsaac's employment, Defendant McCosby adopted an approach of management by intimidation and fear, involving unrelenting bullying and harassment of Plaintiff on a daily basis.

24.

After Plaintiff McIsaac completed a task, McCosby would shake in anger and berate Plaintiff about his competence, which hindered Plaintiff's ability to perform his job functions to the best of his ability.

25.

After his initial three-month probationary appointment, Plaintiff McIsaac attempted to resolve his concerns with Defendant McCosby directly, to which Defendant McCosby condescendingly responded, "[y]ou are in my boot camp now," a reference to Plaintiff's past experience in the military.

26.

After Defendant McCosby was promoted to Director of Operations in November 2016, he forced Plaintiff McIsaac to participate in a bizarre daily ritual designed to intimidate McIsaac and make him feel inferior. Specifically, Defendant McCosby would commence his daily

meeting with Plaintiff McIsaac by asking him his job title. Plaintiff would respond that he was an, "Airport Security Manager." Defendant would respond back, "I am the Operations Director; therefore, you will do what I say and you will not win an argument against me."

27.

Defendant McCosby forced Plaintiff McIsaac to repeat this ritual every day for an entire week, though it served no purpose other than purely as a show of Defendant McCosby's power over Plaintiff McIsaac in McCosby's new rank.

28.

Defendant McCosby did not require similarly-situated non-veteran staff to participate in this belittling display.

29.

On March 2, 2017, Plaintiff McIsaac filed a complaint against Defendant McCosby with John Rauback, SAC's Assistant Executive Director, who supervised Human Resources Manager, Rebecca Schmidt.

30.

Mr. Rauback verbally counseled Defendant McCosby regarding McIsaac's allegations on March 21, 2017, after Ms. Schmidt called Mr. Rauback about an incident Mr. McIsaac reported to Human Resources that morning.

31.

Specifically, Mr. McIsaac reported that McCosby was harassing McIssac by repeatedly calling and shouting at him beginning at 10:00 p.m. on the evening of March 20; then at 6:00

a.m. on the morning of March 21; and then finally telling Mr. McIsaac that he was going to meet with him around 10:00 a.m. on March 21 to counsel and reprimand him some more. Ms. Schmidt asked Mr. Rauback to speak with Defendant McCosby about harassing Mr. McIsaac.

32.

Separately, on or about March 20, 2017, a federal Transportation Security Administration ("TSA") Inspector expressed concern and requested information from Plaintiff McIsaac regarding the inoperability of an airport gate.

33.

Defendant McCosby previously forbade Mr. McIsaac from directly communicating with the TSA inspector without having his communications vetted by Defendants first.

34.

Nevertheless, out of concerns for passenger safety and transparency to the federal agency, Mr. McIsaac provided the inspector with a response to her query regarding regulatory compliance at the gate.

35.

Furious that Mr. McIsaac responded to the inspector regarding SAC's non-compliance with security regulations, specifically 49 C.F.R. § 1542 *et seq*., Defendant McCosby reprimanded him on March 21, 2017.

36.

March 21, 2017 also happened to be the same day that Mr. Rauback verbally counseled McCosby for his unlawful discrimination of Mr. McIsaac.

37.

McCosby reminded Mr. McIsaac that it was Defendants' policy that all communications with regulatory authorities had to be "vetted" by Defendants, and that McIsaac was, "not to contact the regulatory entity without my instruction."

38.

When Defendant McCosby was out of the office, he restricted staff, including Plaintiff McIsaac, from all communications with the TSA inspector related to "regulatory issues" arising under 49 C.F.R. § 1542, attempting to confine such communications to his hand-picked designee.

39.

Mr. McIsaac had also been reproached in the past by Defendant McCosby for not "keeping it simple" with the TSA inspector, i.e., disclosing too much information related to Defendants' non-compliance with transportation security regulations.

40.

Preventing a TSA security inspector from freely obtaining information related to compliance with transportation security regulations violates 49 C.F.R. § 1542.5(b).

41.

Plaintiff McIsaac believed it was unlawful, and refused to participate, in any practice by Defendants that involved non-transparency in legal compliance with a TSA security inspector.

42.

Defendant McCosby accused Mr. McIsaac of making "mental" decisions in response to his reporting details of a potential regulatory compliance issue to a TSA official.

43.

McIsaac protested to McCosby that his use of the word, "mental" was inappropriate and offensive, in light of McIsaac's PTSD, but McCosby used it anyway.

44.

Mr. McIsaac believed that Mr. Rauback was his only advocate among Defendants with respect to maintaining his professional dignity and ability to work in a workplace free of discrimination and harassment.

45.

On April 17, 2017, Mr. Rauback wrote a detailed email to Defendant Kelly that expressed his "grave" concerns regarding McCosby's unlawful discrimination and harassment of McIsaac, and the investigation thereof.

46.

Defendant Kelly dismissed the legitimacy of Plaintiff McIsaac's allegations entirely and did not discipline Defendant McCosby.

47.

Rather, Defendant Kelly viewed Mr. Rauback's outcry regarding McCosby's unlawful treatment of McIsaac as a "threat" and "hostile positioning."   Mr. Rauback was placed on administrative leave on or about May 2, 2017, and eventually terminated.[1]

48.

Neither Defendant Kelly nor his staff investigated McIsaac's grievances against McCosby, contrary to policies of SAC.  Rather, at the April 12, 2017 meeting with Rauback, McIsaac, Kelly, and McCosby, Kelly told McIsaac to, "suck it up, marine," in response to McIsaac's claims of discrimination and harassment by Defendant McCosby.

49.

Mr. Rauback, when he was still the Assistant Executive Director and supervising the HR Department, was the only check against Defendants' ongoing discrimination and harassment of Plaintiff McIsaac.   After Rauback was placed on administrative leave on May 2, 2017, Defendants' harassment and discrimination significantly worsened.

50.

On August 28, 2017, MR. McIsaac filed an internal grievance with Human Resources against Defendant McCosby for harassment and bullying, and informed Defendants that he intended to go to the EEOC with his complaint against McCosby.

---

[1] Mr. Rauback has separately filed suit against the City of Savannah, Savannah Airport Commission, and Gregory Kelly related to his termination under File No. 4:18-cv-00167-WTM-CLR.  Plaintiff believes the factual similarities and common questions of his and Mr. Rauback's case meet the requirements for joinder under Rule 19, 20 and 24. As a result, Plaintiff previously moved this Court to intervene in Mr. Rauback's case [See 4:18-cv-00167-WTM-CLR Doc. 18], which motion is pending with the Court.

51.

In September and October 2017, rather than investigating Defendant McCosby and documenting his wrongdoing, Defendants forced Mr. McIsaac to participate in a "mediation" with Defendant McCosby, conducted by a third-party human resources consultant hired by Defendants.

52.

Although the consultant was supposed to be impartial, she worked with Defendant McCosby *ex parte* to "manage" Plaintiff McIsaac's concerns and complaints about how he was treated, including discussing a plan to convince McIsaac to resolve his concerns internally rather than filing a charge with the EEOC.

53.

The "mediator" was also married to one of Defendant SAC's attorneys.

54.

After Plaintiff McIsaac filed his grievance, Defendant McCosby told him his "receptors," did not work, referring again in the most derogatory fashion to his disability of PTSD.

55.

McCosby made this statement regarding McIsaac's "receptors" in the presence of Defendants' "mediator," who took no action to address it.

56.

Defendant Kelly ratified and approved of Defendant McCosby's discrimination and harassment. Even after Plaintiff McIsaac filed his grievance and sent him emails, Kelly never

stepped in to regulate or reprimand McCosby's behavior, nor did he agree to meet with Plaintiff alone to resolve his concerns.

57.

In December 2017, after Defendants again took no action to hold McCosby accountable, McIsaac emailed Rebecca Schmidt in Human Resources, and informed her that he would be filing a charge of discrimination with the EEOC against Defendant McCosby.

58.

Immediately after Plaintiff McIsaac sent this communication to Human Resources, McCosby stated he would write him up for going to the EEOC, and then wrote him up five times in one day.

59.

On December 18, 2017, McCosby wrote Plaintiff McIsaac a memorandum in which he denied him a performance-based pay increase, and placed him on probation until March 19, 2018.

60.

Defendants terminated Plaintiff McIsaac on February 5, 2018.

61.

Plaintiff McIsaac was the only veteran supervised by Defendant McCosby.

14

62.

Defendant Kelly did not question or challenge Defendant McCosby's termination recommendation of McIsaac, even though the termination occurred in the midst of McIsaac's persistent outcries regarding unlawful discrimination.

## GOVERNMENTAL LIABILITY ALLEGATIONS

63.

At all relevant times, Defendant Kelly was the highest-ranking official of Defendants City of Savannah and SAC with final policymaking authority to discipline, place on involuntary administrative leave, suspend, terminate, and take all other actions affecting SAC employees.

64.

Defendant Kelly's decisions to discipline, place on involuntary administrative leave, suspend, terminate, and take all other actions affecting Mr. Rauback's employment were not subject to any meaningful review and did not require any prior approval.

65.

Defendant Kelly was a final decision-maker and individual with final policymaking authority with respect to Defendants' decisions to discipline, place on involuntary administrative leave, suspend, terminate, and take all other actions affecting Mr. McIsaac's employment.

66.

At all relevant times, Defendant McCosby served as the immediate supervisor of Mr. McIsaac, with authority to discipline, terminate, and take all other actions affecting Plaintiff McIsaac's employment, with the approval of Defendant Kelly.

15

67.

Defendant Kelly ratified and adopted unlawful decisions by Defendant McCosby to discriminate against, harass, discipline, and terminate Plaintiff McIsaac.

68.

Defendants McCosby and Kelly undertook all the unlawful actions giving rise to the claims alleged in this Complaint while acting under color of state and local law.

69.

Defendants McCosby and Kelly undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Mr. McIsaac and his federally protected rights.

70.

Additionally, and in the alternative, Defendants McCosby and Kelly undertook all of the above-pled conduct with reckless disregard for Plaintiff and his federally protected rights.

## COUNT I

### FIRST AMENDMENT RETALIATION
### (Asserted under 42 U.S.C. § 1983)
### *Against All Defendants*

71.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

72.

The First Amendment to the Constitution of the United States prohibits governmental entities from retaliating against employees who speak as citizens on matters of public concern.

73.

Plaintiff engaged in speech protected by the First Amendment to the United States Constitution by speaking as a citizen on matters of public concern on multiple occasions, including but not limited to, when he disclosed violations of Transportation Safety Administration regulations applicable to a federal agent in contravention of Defendants' policy of having only Defendants' designee communicate with authorities.

74.

In response to Plaintiff's above-pled constitutionally protected speech, Defendants City of Savannah, SAC, Gregory Kelly, and Fred McCosby subjected Plaintiff to numerous adverse employment actions including but not limited to, subjecting him to unwarranted discipline and reprimand, precluding him from departmental communications, forbidding his communications with regulatory authorities, preparing and disseminating false allegations against him to damage his reputation, and terminating his employment.

75.

Plaintiff's above-pled constitutionally protected speech was a motivating factor in one or more of the decisions by Defendants to subject Plaintiff to the above-pled retaliatory adverse employment actions.

76.

The above-pled retaliatory acts of Defendants constitute unlawful retaliation in violation of the First Amendment to the Constitution of the United States.

77.

The actions of Defendants were taken under color of state and local law.

78.

All of the retaliation complained of herein violated Plaintiff's clearly established constitutional and statutory rights, rights of which any reasonable person would have known.

79.

The actions of Defendants complained of herein were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and he is therefore entitled to punitive damages.

80.

As a direct and proximate result of the above-pled First Amendment retaliation against Plaintiff, he has suffered out of pocket losses and has been deprived of economic benefits, including wage income and other benefits of his employment, including social security, all in an amount to be established at the trial of this case.

81.

The actions of Defendants caused and will continue to cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

82.

Plaintiff is entitled to be reinstated to employment by Defendants, and, if reinstatement is not feasible, he is entitled to an award of damages for future lost wages and benefits of employment.

## COUNT II

### WHISTLEBLOWER RETALIATION IN VIOLATION OF THE GEORGIA WHISTLEBLOWER ACT
### O.C.G.A. § 45-1-4
#### *Against Defendants City of Savannah, Georgia and Savannah Airport Commission*

83.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

84.

Plaintiff was, at all relevant times, a "public employee" as that term is defined by O.C.G.A. § 45-1-4(a)(3).

85.

Defendants City of Savannah and the SAC are each a "public employer" as that term is defined by the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(a)(4).

86.

During his employment, Plaintiff engaged in statutorily protected activity within the meaning of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(a)(2)-(3), by disclosing misconduct amounting to fraud, waste, or abuse and/or violations of "laws, rules, or regulations."

87.

Plaintiff also engaged in statutorily protected activity within the meaning of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d), by cooperating with a federal TSA official's inquiries regarding a possible violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.

88.

The fraud, waste, or abuse, and violations of a law, rule, or regulation which Plaintiff disclosed, and/or the activities, policies, practices, or conduct which Plaintiff had reasonable cause to believe were in violation of or noncompliance with a law, rule, or regulation, included, but were not limited to, violations of:

(a)     USERRA, 8 U.S.C. § 4311 *et seq.*;

(b)     ADA, 42 U.S.C. § 12101 *et seq.*;  and

(c)     49 C.F.R. § 1542 *et seq.*

89.

As a result of Plaintiff's disclosures and objections, Defendants retaliated against him within the meaning of O.C.G.A. § 45-1-4(a)(5) by subjecting him to numerous adverse employment actions including but not limited to, subjecting him to unwarranted discipline and reprimand, forbidding his communications with regulatory authorities, preparing and disseminating false allegations against him to damage his reputation, and terminating his employment.

20

90.

Defendants also violated O.C.G.A. § 45-1-4(d)(1) by having a policy or practice in place that prevented employees from reporting any fraud, waste, abuse, or violations of law, rules, or regulations, to regulatory authorities without first having such reports "vetted" by Defendants.

91.

Plaintiff's disclosures of fraud, waste, abuse, and/or violations of a law, rule, or regulation, and/or his objection and/or refusal to participate in activities, policies, practices, or conduct which he had reasonable cause to believe were in violation of or noncompliance with a law, rule, or regulation, were a motivating factor in Defendants' retaliatory acts against him.

92.

By subjecting Plaintiff to false accusations and unwarranted discipline, placing him on probation, excluding him from communications relevant to performance of his job duties, excluding him from team communications preparing and disseminating false allegations against him to damage his reputation, and terminating his employment because he disclosed violations of laws, rules, and/or regulations and objected to and refused to participate in activities, policies, practices, or conduct which he had reasonable cause to believe were in violation of or noncompliance with a law, rule, and/or regulation, Defendants City of Savannah and SAC retaliated against Plaintiff in violation of the GWA, O.C.G.A. § 45-1-4.

93.

Plaintiff is entitled to reinstatement to his position as Airport Security Manager or an equivalent position with the SAC for the City of Savannah and reinstatement of full fringe benefits and seniority rights that he would have had in the absence of the retaliation he suffered.

94.

In the alternative, Plaintiff is entitled to front pay.

95.

Plaintiff is entitled to compensation for lost wages, economic benefits of his employment with, and other remuneration he would have earned or received in the absence of the retaliation he suffered.

96.

Plaintiff is entitled to non-economic compensatory damages for pain and suffering, including emotional distress, occasioned by Defendants' violation of the Georgia Whistleblower Act.

97.

Plaintiff is entitled to reasonable attorney's fees, court costs, and expenses of litigation.

## COUNT III

**DISCRIMINATION IN VIOLATION OF THE UNIFORMED SERVICES
EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994
38 U.S.C. § 4311**
*Against All Defendants*

98.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

99.

Under USERRA, an employer may not discriminate against or take any adverse action against any person because that person has taken an action to enforce a protection afforded any persons by USERRA, has testified or otherwise made a statement in or in connection with any proceedings under USERRA, has assisted or otherwise participated in an investigation under USERRA, or has exercised a right provided for by USERRA. 38 U.S.C. § 4311(b).

100.

Plaintiff McIsaac is a veteran of the uniformed armed services of the United States. Additionally, as a result of trauma he experienced while serving in the uniformed armed services, he was diagnosed with Post-Traumatic Stress Disorder.

101.

Defendants discriminated against Plaintiff and/or took adverse employment actions, including, but not limited to, subjecting him to severe and pervasive harassment on account of his experience in the military and/or veteran status, unwarranted discipline and placing him on

23

unwarranted administrative leave, suspending his employment, preparing and disseminating false allegations against him to damage his reputation, placing him on probation, terminating his employment.

102.

Plaintiff's above-pled statutorily protected status and activities were a substantial or motivating factor in the decisions by Defendants to discriminate against Plaintiff and/or take the above-pled adverse employment actions against him.

103.

By discriminating against Plaintiff and/or taking the above-pled adverse employment actions against him, Defendants violated USERRA.

104.

As a direct and proximate result of the unlawful actions of Defendants, Plaintiff has suffered lost benefits of employment, including compensation, lost promotional opportunities, lost pension and insurance benefits, lost social security benefits, and other economic damages.

105.

Plaintiff is entitled to back pay and lost economic benefits of his employment, reinstatement, interest, liquidated damages, and all other appropriate damages and relief available under USERRA.

## COUNT IV

**RETALIATION IN VIOLATION OF THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994**
**38 U.S.C. § 4311**
***Against All Defendants***

106.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

107.

Under USERRA, an employer may not discriminate against or take any adverse action against any person because that person has taken an action to enforce a protection afforded any persons by USERRA, has testified or otherwise made a statement in or in connection with any proceedings under USERRA, has assisted or otherwise participated in an investigation under USERRA, or has exercised a right provided for by USERRA. 38 U.S.C. § 4311(b).

108.

During his employment with Defendants, Plaintiff engaged in activities protected by USERRA, including but not limited to, opposing the discrimination and harassment of a fellow employee who is a veteran of the uniformed armed services of the United States, complaining about that discrimination and harassment, giving statements against the continued discrimination and harassment of that veteran and in support of him, and taking action to discipline a person engaged in discrimination and harassment of a veteran in violation of USERRA.

109.

Defendants discriminated against Plaintiff and/or took adverse employment actions, including, but not limited to, subjecting him to unwarranted discipline and placing him on unwarranted administrative leave, suspending his employment, preparing and disseminating false allegations against him to damage his reputation, and terminating his employment.

110.

Plaintiff's above-pled statutorily protected activities were a substantial or motivating factor in the decisions by Defendants to discriminate against Plaintiff and/or take the above-pled adverse employment actions against him.

111.

By discriminating against Plaintiff and/or taking the above-pled adverse employment actions against him, Defendants retaliated against Plaintiff in violation of USERRA.

112.

As a direct and proximate result of the unlawful actions of Defendants, Plaintiff has suffered lost benefits of employment, including compensation, lost promotional opportunities, lost pension and insurance benefits, lost social security benefits, and other economic damages.

113.

Plaintiff is entitled to back pay and lost economic benefits of his employment, reinstatement, interest, liquidated damages, and all other appropriate damages and relief available under USERRA.

## COUNT V

**HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE UNIFORMED
SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994
38 U.S.C. § 4311**
*Against All Defendants*

114.

Plaintiff incorporates each and every preceding paragraph herein by reference as if set forth fully herein.

115.

Under USERRA, an employer may not discriminate against or take any adverse action against any person because that person has taken an action to enforce a protection afforded any persons by USERRA, has testified or otherwise made a statement in or in connection with any proceedings under USERRA, has assisted or otherwise participated in an investigation under USERRA, or has exercised a right provided for by USERRA. 38 U.S.C. § 4311(b).

116.

During his employment with Defendants, Plaintiff was subject to daily severe and pervasive harassment on account of his status as a veteran of the uniformed armed services of the United States.

117.

By harassing Mr. McIsaac, Defendants created a hostile work environment for Plaintiff in violation of USERRA.

118.

As a direct and proximate result of the unlawful actions of Defendants, Plaintiff has suffered lost benefits of employment, including compensation, lost promotional opportunities, lost pension and insurance benefits, lost social security benefits, and other economic damages.

119.

Plaintiff is entitled to back pay and lost economic benefits of his employment, reinstatement, interest, liquidated damages, and all other appropriate damages and relief available under USERRA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That the Court take jurisdiction of this matter;

B.     That process be served;

C.     That the Court award Plaintiff back pay and lost economic benefits of employment, including interest, in an amount to be determined at the trial of this case;

D.     That the Court award non-economic compensatory damages and punitive damages in an amount to be determined by the trier of fact;

E.     That the Court enter an order reinstating Plaintiff to his employment with Defendants, or if this is not practicable, award him front pay damages and lost pension and other economic benefits in lieu thereof;

F.      That the Court award Plaintiff his costs of litigation in this action and reasonable attorney's fees and costs of litigation;

G.      That the Court grant to Plaintiff the right to have a trial by jury on all issues triable by a jury; and

H.      That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 18th day of January, 2019.

**BUCKLEY BEAL, LLP**

By: */s/ Edward Buckley*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com
Brian J. Sutherland (pro hac vice application to be filed)
Georgia Bar No. 105408
bsutherland@buckleybeal.com
Anita Balasubramanian (pro hac vice application to be filed)
Georgia Bar No. 372029
abala@buckleybeal.com

Buckley Beal LLP
600 Peachtree St. NE, Ste. 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile:  (404) 781-1101
*Counsel for Plaintiffs*

29